**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**
**EASTERN DIVISION**

| | |
|---|---|
| Abdihamid Mohamed Mao and Lewis Antone Bauer, | Case No. |
| | **Complaint** |
| Plaintiffs, | |
| | Jury Trial Demanded |
| v. | Fed. R. Civ. P. 38(b) |
| Cavalier County, John F Metzger, in his individual capacity, Shawn G Brien, in his individual capacity, Gabriel J Johnston, in his individual capacity, and Dawson D Biby, in his individual capacity, | |
| Defendants. | |

For their Complaint, Plaintiffs Abdihamid Mohamed Mao ("Mao") and Lewis Antone Bauer ("Bauer") state and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Mao is a citizen of Canada. He is a licensed attorney who has extensive experience investigating financial fraud and obtaining relief for his clients.

2.      Plaintiff Bauer is a citizen of North Dakota. He was a victim of financial fraud. Bauer retained the services of Mao to assist in investigating the fraud-related matter.

3.      Defendant Cavalier County is a municipality incorporated in the State of North Dakota. The Cavalier County Sheriff's Office ("CCSO") is an agency of Cavalier County.

4.      Defendant John F Metzger ("Metzger") is, upon information and belief, a citizen of North Dakota. Metzger served as an officer of the CCSO at all material times. He acted under color of state law at all material times. He is sued in his individual capacity.

5.      Defendant Shawn G Brien ("Brien") is, upon information and belief, a citizen of North Dakota. Brien served as an officer of the CCSO at all material times. He acted under color of state law at all material times. He is sued in his individual capacity.

6.      Defendant Gabriel J Johnston ("Johnston") is, upon information and belief, a citizen of North Dakota. Johnston served as an officer of the CCSO at all material times. He acted under color of state law at all material times. He is sued in his individual capacity.

7.      Defendant Dawson D Biby ("Biby") is, upon information and belief, a citizen of North Dakota. Metzger served as an officer of the CCSO at all material times. He acted under color of state law at all material times. He is sued in his individual capacity.

## JURISDICTION

8.      The plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, the First, Fourth, and Fourteenth Amendments to the United States

Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3). These statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

9.      State-law claims stated herein arise from the same case or controversy as the claims providing original jurisdiction. Supplemental jurisdiction over those claims is appropriate pursuant to 28 U.S.C. § 1367(a).

10.      Events giving rise to this action occurred in Cavalier County, North Dakota. Venue is proper under 28 U.S.C. § 1391(b)(2).

## **FACTUAL ALLEGATIONS**

11.      Before May 2025, Bauer was the victim of financial fraud.

12.      Mao is a Canadian attorney who has experience investigating financial fraud and recovering funds for clients. Mao ran a successful law firm focused on investigations and related services.

13.      Bauer retained Mao to recover funds lost based on the financial fraud.

14.      Following Mao's investigative work, Bauer retained a North Dakota attorney to pursue resolution of the matter, which ultimately resulted in a favorable settlement.

15.      Bauer later learned that another North Dakota resident, L.P., was also the victim of financial fraud. Bauer recommended that L.P. retain Mao to investigate and recover the lost funds.

16.      L.P. retained Mao to investigate and recover the lost funds.

17.      Mao requested initial payments from L.P so that he could start providing services.

18.    When L.P. tried to transfer money to Mao, the bank declined to execute the transfer and required identity verification for Mao to ensure that the transaction was legitimate.

19.    Mao traveled from his office in Canada to Cavalier County so that his identity could be verified in person at L.P.'s bank.

20.    During his travel, Mao's identity and status as an attorney was verified by U.S. border officials during his entry into the United States.

21.    Mao went to L.P.'s bank, and his identity was verified.

22.    On May 9, 2025, Mao, Bauer, L.P. and others were at L.P.'s home to discuss Mao's investigative services.

23.    During that meeting CCSO officer Metzger arrived at L.P.'s home. Metzger stated that he was investigating suspicious behavior by Mao.

24.    When Metzger arrived, he did not possess any information that supported that Mao or Bauer had engaged in criminal conduct. Metzger only had bare suspicion that Mao may not have been a lawyer and investigator as he claimed.

25.    Metzger talked to L.P. and others at the home. Metzger learned that L.P. had retained Mao to help investigate funds lost due to financial fraud.

26.    CCSO officer Brien arrived to support Metzger's investigation.

27.    The officers learned that Mao's identity and status as an attorney had been verified by U.S. border officials when Mao crossed into the United States.

28. The officers verified that Mao was listed as a duly licensed attorney in Canada. The officers received information that Mao ran a successful business that conducted investigations and obtained recoveries for his clients.

29. Mao provided valid identification documents, including his driver's license and passport.

30. Bauer told officers that Mao was legitimate and that Mao had helped him investigate and addressing financial fraud-related issues..

31. Metzger contacted a Canadian police agency to verify Mao's identity. The agency stated that there were not many records related to Mao, likely because he had little police contact.

32. Mao possessed a valid Canadian driver's license.

33. Metzger misrepresented the appearance of Mao's name and license, which led the Canadia police agency to wrongly assume that Mao's driver's license may have been false. In fact, Mao's license was valid, and his identification documents had been verified by U.S. border officials, which was known to Metzger at the time he made the misrepresentation.

34. Metzger contacted CCSO Chief Deputy Johnston about the matter.

35. Johnston directed Metzger to arrest Mao and search his belongings.

36. Johnston gave this directive despite the absence of any evidence supporting probable cause of a crime.

37. Metzger proceeded to arrest Mao despite the complete absence of evidence supporting probable cause of a crime.

38.    Brien participated in the arrest of Mao despite the complete absence of evidence supporting probable cause of a crime.

39.    Mao was handcuffed, arrested, and taken into custody.

40.    At Johnston's direction, Metzger and Brien also arrested Bauer. The officers arrested Bauer despite the complete absence of evidence supporting probable cause of a crime.

41.    Mao and Bauer were detained at the Lake Region Correctional Center.

42.    Officers knew that they were conducting unlawful arrests without sufficient evidence, but they conducted the arrests anyway. Officers conducted the arrests so that they could also perform illegal searches and seizures of Mao with the hope that incriminating evidence would be found.

43.    Officers arrested Mao and Bauer maliciously and in intentional disregard of Mao and Bauer's constitutional rights.

44.    At Johnston's direction, Metzger proceeded to apply for search warrants for searches of Mao's rental vehicle and Mao and Bauer's electronic devices.

45.    Officers intended to conduct these searches knowing that evidence supporting probable cause of criminal activity did not exist.

46.    In the applications for search warrants, Metzger falsely represented that evidence supporting probable cause existed to arrest Mao and Bauer for financial crimes. Metzger made this false representation despite knowing that no such evidence supporting probable cause existed. Metzger omitted material

exculpatory information that Mao was a legitimate attorney and investigator whose identity had been verified by U.S. border officials and who appeared on a register for Canadian attorneys. Metzger also failed to state that Mao was retained voluntarily by L.P. to investigate and recover lost funds. Metzger also failed to state that there was no indication that Mao was defrauding L.P. or that Mao was assuming a false identity. Metzger falsely stated that Mao had a suspicious driver's license when, in fact, Mao's license was legitimate. Metzger failed to state that his misrepresentations to the Canadian police agency caused them to state that the license may have been false.

47. The search warrant applications did not identify any particular facts supporting probable cause that Bauer or Mao were engaged in criminal activity. Even with Metzger's misrepresentations and omissions, it was facially clear that the warrants were not supported by evidence supporting actual probable cause.

48. Despite these issues, warrants were issued for the searches requested by Metzger.

49. Metzger requested broad searches of the electronic devices that were not supported by probable cause and were overly broad.

50. CCSO officers Metzger, Brien, and Biby conducted the unlawful search of Mao's vehicle.

51. Upon information and belief, the officers knew that the search was not supported by probable cause and was based on misrepresentations and material omissions by Metzger.

52.     Metzger sent Mao and Bauer's electronic devices to the North Dakota Bureau of Criminal Investigation to be searched.

53.     Metzger provided statements of probable cause for Bauer and Mao to have them criminally charged. Metzger provided misrepresentations and material omissions similar to his applications for search warrants. No evidence supporting actual probable cause to charge Bauer and Mao existed.

54.     Due to the officers' misconduct and false statements, Mao and Bauer were criminally charged with felony financial crimes. Mao and Bauer's charges were publicly reported.

55.     During the criminal prosecution, it became apparent that no evidence supported the charges that Metzger had recommended. The criminal prosecutions against Mao and Bauer were dismissed.

56.     The CCSO opened an internal investigation related to this matter. CCSO personnel recognized the substantial misconduct that occurred here during a phone call with Mao and his defense counsel.

57.     Metzger was released from the CCSO following the internal investigation.

58.     Biby stepped down from his position at the CCSO while the internal investigation was active.

59.     Records of the investigation show that officers expressed racial animus toward Mao. Officers made comments suggesting that Mao was suspicious because he was Black or Somali. Officers mocked Mao's claims that he was an

investigator and a lawyer and made disparaging comments during their investigation.

60.    The officers' comments suggest that Mao's racial identity as a Black Somali contributed to him being suspected, arrested, and charged despite the absence of evidence supporting probable cause.

61.    Mao and Bauer suffered deprivation of liberty due to the incident. Both were arrested and held in custody. Both faced criminal prosecution that they were required to defend against. Both had items seized and searched due to the improper investigation.

62.    Mao and Bauer suffered significant reputational damage due to this incident. The criminal charges and allegations caused significant stigma and reputational harm. Mao suffered substantial business detriment due to the charges and allegations. His investigation business was substantially harmed, and he was forced to sell it due to the damage done.

63.    Mao and Bauer suffered emotional distress due to the unlawful arrest, detention, searches and seizures, and criminal charges.

64.    The officers engaged in their misconduct willfully and maliciously in intentional disregard of Mao and Bauer's rights.

65.    The defendant officers acted within the scope of their employment as CCSO officers at all material times.

## CAUSES OF ACTION

### Count 1 – 42 U.S.C. § 1983 – Fourth Amendment Violation
### Unlawful Seizure and Detention
### *Defendants Metzger, Brien, and Johnston*

66.    The plaintiffs reallege allegations in Paragraphs 1-65 of this Complaint as if fully stated herein.

67.    The defendants acted under color of state law while performing the acts described herein.

68.    The defendants deprived the plaintiffs' Fourth and Fourteenth Amendment rights through the actions described herein.

69.    Metzger, Brien, and Johnston knew that no evidence supported probable cause of criminal activity perpetrated by Mao or Bauer.

70.    Despite the absence of probable cause, Johnston directed and Metzger and Brien executed the arrests of Mao and Bauer.

71.    The defendants' actions caused the unlawful pretrial detention of Mao and Bauer.

72.    Mao and Bauer's arrest and pretrial detention were caused, in part, by misrepresentations and material omissions by the defendant officers.

73.    The defendants' actions violated constitutional rights that were clearly established at the time of the incident.

74.    The defendants acted with evil intent or reckless indifference to the plaintiffs' rights.

75.     The defendants subjected the plaintiffs to deprivations of their rights in such a manner as to render the defendants liable for punitive damages.

76.     As direct and proximate result of the acts of the defendants, the plaintiffs suffered injuries and other harms that entitle them to damages.

77.     The manner in which the defendants deprived the plaintiffs of their rights supports an award of punitive damages, which are necessary to deter further improper conduct.

78.     The plaintiffs are entitled to fully recover their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

**Count 2 – 42 U.S.C. § 1983 – Fourth Amendment Violation**
**Unlawful Search and Seizure**
***Defendants Metzger, Brien, Johnston, and Biby***

79.     The plaintiffs reallege allegations in Paragraphs 1-65 of this Complaint as if fully stated herein.

80.     The defendants acted under color of state law while performing the acts described herein.

81.     The defendants deprived the plaintiffs' Fourth and Fourteenth Amendment rights through the actions described herein.

82.     The defendants applied for a search warrant using misrepresentations and material omissions.

83.     The defendants knew that probable cause did not exist to support a search of Mao and Bauer's possessions.

84.    The defendants conducted unlawful seizures and searches of Mao's vehicle and Mao and Bauer's electronic devices.

85.    The defendants seized personal possessions of Mao and Bauer.

86.    The defendants conducted expansive searches of Mao and Bauer's electronic devices in excess even of the false financial crimes for which officers claimed they were investigating.

87.    The defendants' actions violated constitutional rights that were clearly established at the time of the incident.

88.    The defendants acted with evil intent or reckless indifference to the plaintiffs' rights.

89.    The defendants subjected the plaintiffs to deprivations of their rights in such a manner as to render them liable for punitive damages.

90.    As direct and proximate result of the acts of the defendants, the plaintiffs suffered injuries and other harms that entitle them to damages.

91.    The manner in which the defendants deprived the plaintiffs of their rights supports an award of punitive damages, which are necessary to deter further improper conduct.

92.    The plaintiffs are entitled to fully recover their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

**Count 3 – 42 U.S.C. § 1983 – Fourteenth Amendment Violations
of Due Process**
*Defendants Metzger, Brien, and Johnston*

93.    The plaintiffs reallege allegations in Paragraphs 1-65 of this Complaint as if fully stated herein.

94.    The defendants acted under color of state law while performing the acts described herein.

95.    The defendants deprived the plaintiffs of their Fourteenth Amendment Due Process rights through the actions described herein.

96.    The defendants provided misrepresentations and material omissions to support the charging of Mao and Bauer. The defendants did so in violation of the plaintiffs' Due Process rights.

97.    The defendants' actions violated constitutional rights that were clearly established at the time of the incident.

98.    The defendants acted with evil intent or reckless indifference to the plaintiffs' rights.

99.    The defendants subjected the plaintiffs to these deprivations of rights in such a manner as to render the defendants liable for punitive damages.

100.    As direct and proximate result of the acts of the defendants, the plaintiffs suffered injuries and other harms that entitle them to damages.

101.    The manner in which the defendants deprived the plaintiffs of their rights supports an award of punitive damages, which are necessary to deter further improper conduct.

102.    The plaintiffs are entitled to fully recover their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

### Count 4 – 42 U.S.C. § 1983 – Fourteenth Amendment Violation
### of Equal Protection Clause
### *Mao v. Metzger, Brien, Johnston, and Biby*

103.    The plaintiffs reallege allegations in Paragraphs 1-65 of this Complaint as if fully stated herein.

104.    Mao is of Black Somali heritage.

105.    Officers deprived Mao of his Equal Protection Clause rights due to the actions described herein.

106.    Officers made disparaging and mocking comments about Mao's race.

107.    Officers stated that Mao's race made him suspicious.

108.    Officers arrested Mao in the absence of probable cause because Mao is of Black Somali heritage.

109.    Officers made misrepresentations and omitted material exculpatory information to justify their unlawful and racially-motivated arrest.

110.    The defendants acted under color of state law while performing the acts described herein.

111.    The defendants' actions violated constitutional rights that were clearly established at the time of the incident.

112.    The defendants deprived Mao of his constitutional rights due to his status as a non-white individual.

113.    The defendants acted with evil intent or reckless indifference to Mao's rights.

114.    The defendants subjected Mao to these deprivations of rights in such a manner as to render the defendants liable for punitive damages.

115.    As direct and proximate result of the acts of the defendants, Mao suffered injuries and other harms that entitle him to damages.

116.    The manner in which the defendants deprived Mao of his rights supports an award of punitive damages, which are necessary to deter further improper conduct.

117.    Mao is entitled to fully recover his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

### Count 5 – False Arrest and Imprisonment
### *All Defendants*

118.    The plaintiffs reallege allegations in Paragraphs 1-65 of this Complaint as if fully stated herein.

119.    The defendant officers arrested and detained the plaintiffs without probable cause.

120.    The defendant officers did so maliciously and in intentional disregard of the plaintiffs' rights.

121.    The defendant officers acted within the scope of their employment as CCSO officers at all material times.

122.    Defendant Cavalier County is liable under the theories of respondeat superior and vicarious liability due to the actions of its officers.

123.    The plaintiffs suffered damages in an amount to be determined due to unlawful arrests and detentions.

### Count 6 – Malicious Prosecution
### *All Defendants*

124.    The plaintiffs reallege allegations in Paragraphs 1-65 of this Complaint as if fully stated herein.

125.    The defendant officers made false representations and materially omitted exculpatory information so that the plaintiffs would be criminally charged.

126.    No evidence supporting probable cause to charge the plaintiffs with criminal activity existed.

127.    The defendant officers did so maliciously and in intentional disregard of the plaintiffs' rights.

128.    The defendant officers acted within the scope of their employment as CCSO officers at all material times.

129.    Defendant Cavalier County is liable under the theories of respondeat superior and vicarious liability due to the actions of its officers.

130.    The plaintiffs suffered damages in an amount to be determined due to unlawful prosecutions.

### **PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs pray for judgment as follows:

1.    That the Court find that the defendants liable for the claims asserted herein;

2.      As to Counts 1-4, a money judgment against the officer defendants for compensatory and punitive damages, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest;

3.      As to Counts 5-6, a money judgment against the defendants for compensatory damages, together with costs and prejudgment interest;

4.      For such other and further relief as this Court may deem just and equitable.

## JURY DEMAND

The plaintiffs demand a trial by jury on all issues triable under Rule 38 of the Federal Rules of Civil Procedure.

Date: May 19, 2026

**RINGSTROM DEKREY PLLP**

Dane DeKrey (MN #0397334)
814 Center Ave., Ste. 5
Moorhead, MN 56560
P: (218) 284-0484
dane@ringstromdekrey.com

**LAW OFFICE OF ERIC A. RICE, LLC**

Eric A. Rice (MN #0388861)
1 W. Water St., Ste. 275
St. Paul, MN 55107
P: (651) 998-9660
F: (651) 344-0763
eric@ricedefense.com

*Attorneys for Plaintiff*